UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| BEAUMONT FAMILY EYE CARE, P.C., And PETER CASS, individually | § § § § § § § § | Cause Number: |
| v. | | |
| CARNIVAL CORPORATION D/B/A CARNIVAL CRUISE LINES | | |

PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, Beaumont Family Eye Care, P.C. and Peter Cass, Individually hereinafter referred to Plaintiffs, complain of Carnival Corporation d/b/a Carnival Cruise Lines ("Carnival"), Defendant, and would respectfully show the Court as follows:

I.
PARTIES

1. Plaintiff, Beaumont Family Eye Care, P.C., is citizen of Texas, as well as the United States, and does business at all material times in Jefferson County, Texas.

2. Plaintiff, Peter Cass is a citizen of Texas, as well as the United States, and have been domiciled at all material times in Jefferson County, Texas.

3. Defendant CARNIVAL CORPORATION D/B/A CARNIVAL CRUISE LINES is a Panamanian corporation doing business in the State of Texas.  Service of process was had upon Defendant by serving its Texas registered agent for service, National Registered Agents, Inc., 1021 Main Street, Suite 1150, Houston, Texas 77002. It owns and operated the cruise ship in question.

II.
JURISDICTION & VENUE

4. Diversity jurisdiction is proper in this Court under 28 U.S.C. §1332 (a)(1) because the

Defendant is domiciled outside Texas and the Plaintiffs are citizens of Texas; and the amount in controversy exceeds $75,000, excluding interest and costs. 5

5. Maritime jurisdiction is proper in this Court because Plaintiffs assert fraud and misrepresentation against Defendant in connection with the formation of a maritime contract and breach of performance of a maritime contract pursuant to 28 U.S.C. §1333.

6. In the alternative, this Court has supplemental jurisdiction over all other claims that are so related to claims in action within the original jurisdiction that they form the same case or controversy under Article III of the U.S. Constitution pursuant to 28 U.S.C. §1367.

7. Venue is proper in this Federal Court in the Eastern District of Texas because the Plaintiffs resided in this District at all relevant times in question. Pursuant to the Maritime Liability Statute, 46 U.S.C.A. § 30101 et seq. and Tex. Civ. Prac. & Rem. Code § 15.0181(c)(3), venue in this Court is proper.

8. Any contractual venue provisions different from those stated above are void or voidable. Plaintiffs plead that any other venue provisions are void based on the principles of:

A.  Unconscionability. Under the totality of the circumstances, Plaintiffs had no bargaining ability. In addition, prior to leaving port, Defendant was aware of the mechanical problems on board the Vessel in question and the lack of its seaworthiness; or in the alternative,

B.  Misrepresentation and Fraudulent Inducement. Prior to departure, Defendant knew that the Vessel in question was not sufficiently seaworthy to be able to provide Plaintiffs a safe, sanitary, and enjoyable voyage. Plaintiffs relied on Defendant's false assertion that they would have a safe, comfortable, and fun cruise experience aboard Defendant's Vessel.

III.
FACTS

9. Plaintiffs were passengers and invitees aboard the Carnival Triumph (the "Vessel") that left port from Galveston, Texas on Thursday, February 7, 2013 for a leisure cruise vacation to Mexico. The Vessel was scheduled to arrive back to Texas on Monday morning, February 11, 2013. Plaintiff Cass had paid for his entire office staff and some spouse to take this cruise, closing his business during the planned vacation he was sponsoring for his employees.

10. However, on Sunday, February 10, 2013, while at sea at around 5:30 a.m., the Vessel lost power after an engine room caught fire. The Vessel either drifted or floated at sea for five days without a propulsion system, most electric generators, and other necessary machinery, including but not limited to, sanitation systems, waste water disposal, refrigeration for food, climate control, and plumbing.

11. As a result, Plaintiff, Cass was unable to return to his place of business, Plaintiff Beaumont Family Eye Care, P.C. for five days, thus forcing his business to close during the period of time beyond the planned voyage. As a result, Plaintiff have suffered economic loss.

12. Plaintiffs did not set foot on land until late Thursday or early Friday morning, February 14 and 15, 2013 in Mobile, Alabama, at which time Plaintiffs had to endure another long journey before reaching home in Texas.

13. At all relevant times, the Vessel was owned, operated, managed, and controlled by Defendant Carnival Corporation d/b/a Carnival Cruise Lines.

14. Defendant had previously encountered related safety issues with the Vessel during the weeks leading up to the voyage in question.

IV.
CAUSE OF ACTION 1: NEGLIGENCE

15. Plaintiffs re-allege all prior paragraphs as though fully set forth herein.

16. As a common carrier, Defendant had a high duty of care to: (a) provide Plaintiffs with a safe passage aboard a seaworthy vessel and (b) exercise a high duty of care and effort to avoid subjecting Plaintiffs to suffering or inconvenience. Defendant owed a high duty to Plaintiffs to exercise reasonable care to avoid a foreseeable risk of injury to Plaintiffs.

17. Based on the recent history of problems on the Vessel prior to leaving port and prior to the engine room fire, Defendant's management should have had high suspicions or actual knowledge that the Vessel could possibly encounter serious difficulties on this voyage, and that Defendant could not, in the event of an emergency such as encountered on this voyage, reasonably care for and keep safe the four-thousand (4000) persons on board. However, Defendant proceeded with the voyage in question anyway.

18. Defendant's negligent acts and omissions were a direct and proximate cause of the crippled Vessel and the resulting the damages sustained by Plaintiffs.

19. The negligent acts and omissions, among others, committed by Defendant, are as follows:

A. Failure to properly and adequately maintain the Vessel in a reasonable and safe manner to prevent a fire in the engine room;
B. Failure to properly and adequately maintain the Vessel so if a fire were to break out, it would not result in loss of power to the Vessel;
C. Failure to properly and adequately inspect the Vessel for hazards prior to leaving port and prior to the engine room fire;
D. Failure to adequately maintain the engines and machinery of the Vessel once a fire broke out;
E. implement, follow, and enforce applicable safety and sanitation regulations aboard the Vessel;
F. Failure to warn passengers of dangers that Defendant knew or should have known as to the unreasonable and unsafe conditions which existed on the Vessel prior to leaving the Texas port;
G. Failure to adequately staff, supervise, and train staff to properly monitor and take

        adequate measures to abate the danger of fire;
H.    Failure to properly hire competent management of the Vessel;
I.    Failure to properly supervise competent management of the Vessel;
J.    Failure to reasonably maintain the seaworthiness of the Vessel; and
K.    Failure to otherwise maintain the Vessel in a safe and reasonable manner.

20. One or more of the above acts of negligence was a direct and proximate cause of the harm and damages suffered by Plaintiffs.

21. Plaintiffs invoke the doctrine of respondeat superior with respect to the acts and omissions of Defendant's officers, employees, or agents.  Plaintiffs would show that Defendant's conduct, through its officers, employees, or agents, as set forth herein and otherwise, constituted negligence by act or omission, each, separately and together, was a direct and proximate cause of the occurrence or injuries in question and Plaintiffs' damages resulting from the occurrence in question.

22. Plaintiffs would further show that Defendant's conduct and omissions together constituted gross negligence. Defendant either (a) created the above-described dangerous conditions, (b) had actual or constructive knowledge of the dangerous conditions and did not correct them, and/or (c) had actual or constructive knowledge of the dangerous conditions, or a similar dangerous condition, or the cause of the dangerous conditions were repetitive, continuous, ongoing, recurring, or occurring with some regularity prior to the departure in question.

V.
CAUSE OF ACTION 4: FRAUD BY NON-DISCLOSURE

23. Plaintiffs re-allege all prior paragraphs as though fully set forth herein.

24. Defendant concealed from or failed to disclose material facts that the Vessel was not seaworthy, that there were recent and ongoing safety issues with the Vessel's equipment and propulsion systems, and that Defendant might not provide a safe, sanitary, and

enjoyable passage on the Vessel to the approximately 3000 guests and 1000 staff on board. These facts were material. Defendant was deliberately silent when it had a duty to speak. Defendant knew that Plaintiffs were ignorant of the facts and the Plaintiffs did not have an equal opportunity to discover the facts.

25. By failing to disclose these facts, Defendant intended to induce Plaintiffs to take their scheduled voyage on the Vessel and to refrain from asking for a refund or a rescheduling of their cruise.

26. Plaintiffs relied on Defendant's nondisclosures and were injured as a result of acting without knowledge of the undisclosed facts.

## VI.
## CAUSE OF ACTION 5: FRAUD

27. Plaintiffs re-allege all prior paragraphs as though fully set forth herein.

28. At all relevant times while Defendant expected Plaintiffs to take the cruise in question, Defendant made false representations to Plaintiffs concerning material facts that Plaintiffs would be provided a safe, sanitary, and enjoyable passage on a seaworthy vessel with reasonable accommodations. When Defendant made this representation, Defendant knew the representation was false or made the representation recklessly, as a positive assertion, that it might very well be false, and without knowledge of its truth.

29. Plaintiffs relied on Defendant's representation to their detriment.

30. Defendant's false representation caused Plaintiffs' injuries.

## IX.
## DAMAGES

A. DAMAGES for Plaintiffs

31. Plaintiffs have suffered economic loss from the five day closure of Plaintiffs business.

Plaintiffs have suffered further economic loss be virtue of additional expenses related to returns their employees to Beaumont, Texas from Mobile, AL and additional expenses related to maintaining the business while all its employees were stranded at see.

## X.
## EXEMPLARY DAMAGES

32. Plaintiffs' injuries resulted from Defendant's gross negligence, malice, or actual fraud, which entitles Plaintiffs to exemplary damages.

## XI.
## CLAIM FOR PRE-JUDGMENT AND POST-JUDGMENT INTEREST

33. Plaintiffs claim interest in accordance with applicable law.

## XII.
## JURY DEMAND

34. Plaintiffs respectfully request a jury trial.

## XIII.
## PRESERVATION

The Defendant is hereby given notice that any document or other material, including electronically stored information, that may be evidence or relevant to any issue in this case is to be preserved in its present form until this litigation is concluded.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendant be cited to appear and answer herein, and that upon final trial, Plaintiffs recover all their damages as specified above from Defendant, plus costs of Court, pre_judgment and post-judgment interest at the legal rate, and have such other and further relief, general and special, at law and in equity, to which Plaintiffs may be justly entitled under the facts and circumstances.

Respectfully submitted,

/S/
Matthew C. Matheny
State Bar No. 240390040
PROVOST★UMPHREY LAW FIRM, L.L.P.
P. O. Box 4905
Beaumont, Texas 77704-4905
(409) 835-6000 phone
(409) 813-8618 fax

**ATTORNEYS FOR PLAINTIFFS**